# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

*United States of America v. Khamsay Xayamonty*
Case No. 3:16-cr-00045-TMB

By: THE HONORABLE TIMOTHY M. BURGESS

PROCEEDINGS: ORDER FROM CHAMBERS

The matter comes before the Court on Defendant Khamsay Xayamonty's Amended Supplemental Motion for Compassionate Release at Docket 227 (the "Amended Motion"), supplementing Xayamonty's initial *pro se* Motions to Reduce Sentence at Docket 223 and Docket 226.[1] Xayamonty asks the Court for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A), because he has completed the Residential Drug Abuse Program ("RDAP") and he faces "extraordinary and compelling reasons" warranting immediate release due to a Bureau of Immigration and Customs Enforcement ("BICE") immigration detainer.[2] The United States Probation and Pretrial Services Office ("USPO") and the United States oppose the Motion.[3] For the reasons discussed below, the Amended Motion is **DENIED**.

### A. Background

On November 20, 2018, Xayamonty pleaded guilty to Drug Conspiracy, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B).[4] On December 1, 2018, the Court sentenced Xayamonty to 108 months' imprisonment with five years of supervised release.[5] Xayamonty is currently housed in the Federal Correctional Institution Sandstone ("FCI Sandstone") in Sandstone, Minnesota, with a projected release date of February 12, 2023.[6]

Since 2020, Xayamonty has filed a series of motions for compassionate release. First in May 2020, Xayamonty moved for compassionate release based on the COVID-19 pandemic, the Court denied his motion.[7] Despite being represented by counsel, Xayamonty again asked the Court in two *pro se* motions to reconsider its 2020 denial.[8] As a basis for the motions, Xayamonty cited the

---

[1] Dkt. 227 (Amended Motion); Dkt. 223 (*Pro Se* Motion to Reduce Sentence I); Dkt. 226 (*Pro Se* Motion to Reduce Sentence II).
[2] Dkt. 227.
[3] Dkt. 229 at 2 (USPO Memorandum); Dkt. 230 (Opposition).
[4] Dkt. 192 (Minute Entry).
[5] Dkt. 194 (Judgment).
[6] *See, e.g.*, Dkt. 229 at 1.
[7] Dkt. 219 (2020 Motion for Compassionate Release); Dkt. 214 (Order Denying Compassionate Release).
[8] These motions are included by way of background and are not before the Court today. Dkt. 223; Dkt. 226.

completion of RDAP and his belief that he was "over-serving his sentence" due to the BICE immigration detainer.[9] However, because Xayamonty filed *pro se* while having legal representation, the Court denied these motions and requested counsel to notify the Court whether she intended to submit an amended motion.[10] On August 30, 2022, counsel for Xayamonty submitted the Amended Motion and the Court *sua sponte* expedited the matter for review.[11]

In the Amended Motion, Xayamonty acknowledges that he has not exhausted his administrative remedies and asks the Court to "excuse exhaustion" because BOP "has predetermined the issue" by declining Xayamonty's release to home detention due to the BICE detainer.[12] Xayamonty argues that this "unjust bureaucratic quagmire" stalling his release to home confinement provides "extraordinary and compelling reasons" to warrant compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).[13] Xayamonty reiterates that he remains incarcerated because he is subject to a BICE detainer.[14] Upon release from FCI Sandstone, Xayamonty expects to be held in BICE custody for a minimum of 90 days.[15] However, as a citizen of Laos, BICE is unlikely to ultimately deport Xayamonty as there is no prison transfer treaty between Laos and the United States.[16]

Xayamonty asserts that this situation, created because of his immigration status, warrants compassionate release under the 18 U.S.C § 3553(a) factors because he "would otherwise be released on home detention, according to BOP's own policy, were it not for the immigration hold."[17] Consequently, Xayamonty requests immediate release.

USPO opposes the Amended Motion on two grounds.[18] First, USPO notes that Xayamonty's failure to previously participate in RDAP was only one of the multiple reasons the Court denied his 2020 request—the Court's reasons for its previous denial included: (1) Xayamonty's failure to identify any "medical conditions or other 'extraordinary and compelling reasons'" that would contribute to his heightened COVID-19 risk; (2) his failure to demonstrate that his release was warranted under the 18 U.S.C. § 3553(a) factors; and (3) his failure to show why he did not pose a danger to the community.[19] Second, USPO contends that the Court should deny the Amended Motion on the grounds that "his illegal status prevents him from participating in home confinement" because such a reduction would mean "he would receive time off his sentence which citizens would not be able to receive."[20]

---

[9] *See generally* Dkt. 219; *see* Dkt. 226 at 3.
[10] Dkt. 220 (Text Order).
[11] Dkt. 227; Dkt. 228 (Text Order Expediting Matter).
[12] Dkt. 227 at 3.
[13] Dkt. 227 at 2.
[14] *Id.*
[15] Dkt. 219-1 at 2–3.
[16] *Id.* at 2.
[17] Dkt. 227 at 6 (Xayamonty makes short shrift of his § 3553(a) factors analysis by briefly referencing his completion of RDAP and his good behavior while in prison).
[18] Dkt. 229 at 2.
[19] *See* Dkt. 214.
[20] *Id.*

The United States opposes the Amended Motion for three reasons.[21] First, the United States asserts that Xayamonty has not exhausted his administrative remedies.[22] Second, Xayamonty has not demonstrated why his current immigration detainer constitutes extraordinary and compelling circumstances. The United States refers to an analogous case,[23] where the Southern District of New York determined an immigrant, who was otherwise eligible for home confinement and would likely face BICE detention following his federal sentence, had not shown extraordinary and compelling reasons warranting release."[24]

Finally, the United States argues that Xayamonty's request "has failed to demonstrate that he is not a danger to the safety of the community or otherwise merits release under the § 3553(a) factors." Both Xayamonty's criminal history and the facts of his drug conspiracy conviction demonstrate serious criminal behavior—he was both previously convicted of two violent assaults and played a "significant role in transporting drugs from California to Alaska"—disfavoring a sentence reduction.[25]

### B. Legal Standard

Pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, a defendant may move the district court for a sentence reduction only after fully exhausting their administrative remedies.[26] The court may grant the motion if, after considering the applicable factors set forth in 18 U.S.C. § 3553(a), it finds "extraordinary and compelling reasons warrant such a reduction[.]"[27] For guidance, the Court may look to the Sentencing Commission's policy statement on compassionate release found in U.S.S.G. § 1B1.13.[28] The § 1B1.13 Application Notes further explain what "extraordinary and compelling reasons," including when a defendant suffers from: (1) a terminal illness; (2) a serious physical or medical condition; (3) a serious functional or cognitive impairment; (4) deteriorating mental or physical health related to aging; (5) compelling

---

[21] Dkt. 230 at 6.
[22] *Id.* ("Xayamonty admits he has not exhausted his administrative rights by failing to seek compassionate release from his warden.").
[23] *United States v. Nawaz*, No. 16 CR. 431 (AT), 2021 WL 664128, at *2 (S.D.N.Y. Feb. 19, 2021).
[24] *Id.* (citing 18 U.S.C. § 1231(a)(6); *Zadvydas v. Davis*, 533 U.S. 678, 699–700 (2001)) ("Congress and the Supreme Court have determined that ICE detention after a criminal sentence has been served is permissible, and set limits and remedies with respect to such detention. . . . Should Defendant's confinement by ICE extend to a period of time which is excessively long, he may take administrative and legal action to remedy that. But a preemptive motion for compassionate release is not the avenue for redress.").
[25] Dkt. 230 at 8.
[26] *See* 18 U.S.C. § 3582(c)(1)(A) ("the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . .").
[27] 18 U.S.C. § 3582(c)(1)(A).
[28] *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam).

family circumstances; or (6) any other extraordinary or compelling reasons.[29] Importantly, the § 1B1.13 policy statement is "not binding" on courts that evaluate motions filed by defendants under 18 U.S.C. § 3582(c)(1)(A).[30]

### C. Discussion

As a threshold matter, the Court finds that Xayamonty has not exhausted his administrative remedies as is required by 18 U.S.C. § 3582(c)(1)(A).[31] Although Xayamonty contends that the Court "should excuse exhaustion because BOP has predetermined the issue," the Ninth Circuit is clear "that § 3582(c)(1)(A)'s administrative exhaustion requirement is mandatory and must be enforced when properly raised by the government."[32] Since Xayamonty failed to exhaust his administrative remedies, the Court denies his Amended Motion.

However, even if the Court were to consider the merits of the Amended Motion, Xayamonty has not demonstrated why his BICE detainer amounts to extraordinary and compelling reasons that justify compassionate release.[33]

A BICE immigration detainer does not constitute extraordinary and compelling circumstances. District courts have consistently found a defendant's reliance on the singular fact that a BICE detainer will impose an extra period of confinement is not enough to satisfy the extraordinary and compelling requirement.[34] It should be noted, however, that a BICE detainer is not a total bar to compassionate release. When there are additional underlying circumstances favoring a sentence reduction, district courts have granted such motions despite an existing immigration detainer. For example, during the height of the COVID-19 pandemic, numerous district courts found that extraordinary and compelling reasons existed to grant compassionate release to certain non-citizen defendants with particularly vulnerable medical histories.[35]

---

[29] U.S.S.G. § 1B1.13 cmt. 1(A)–(C).
[30] *Aruda*, 993 F.3d at 802 ("The Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding.").
[31] *See* Dkt. 227 at 3; *see also United States v. Keller*, 2 F.4th 1278, 1282 (9th Cir. 2021) (holding that "§ 3582(c)(1)(A)'s administrative exhaustion requirement imposes a mandatory claim-processing rule that must be enforced when properly invoked.").
[32] *See* Dkt. 227 at 3; *Keller*, 2 F.4th 1278 at 1282.
[33] When *granting* a compassionate release motion, the district court must perform a sequential inquiry by first determining an "extraordinary and compelling" finding and then analyzing the § 3553(a) factors. When *denying* a compassionate release motion, a district court need not perform this inquiry in a specific sequence, nor necessarily analyze both inquiry components. *Keller*, 2 F.4th at 1284.
[34] *See, e.g.*, *United States v. Rosas-Lozano*, No. 3:17-CR-00209-JO-2, 2021 WL 3141507, at *2 (D. Or. July 23, 2021) ("Because Defendant's status as a removable alien is not unusual, his immigration status, without more, is not an extraordinary and compelling reason for granting compassionate release."); *see also Nawaz*, 2021 WL 664128 at *2.
[35] *See, e.g.*, *United States v. Villalobos-Gonzalez*, No. CR15-0202-JCC, 2020 WL 4569697, at *1 n.2 (W.D. Wash. Aug. 7, 2020) ("Defendant notes that several courts have found that a defendant

In this case, Xayamonty does not refer to any additional reasons, medical or otherwise, that would warrant compassionate release. In fact, the Court has already determined that Xayamonty is healthy with no history of serious or chronic illness.[36] Xayamonty's Amended Motion rests solely on the fact that he will be required to remain incarcerated through the remainder of his sentence because he cannot participate in home confinement—approximately six months longer than if he were a U.S. citizen. The Amended Motion, without more, does not rise to the threshold requirement of "extraordinary and compelling."

Accordingly, for the foregoing reasons, the Motion at Docket 227 is **DENIED**.

Entered at the direction of the Honorable Timothy M. Burgess, United States District Judge.

DATE: September 15, 2022.

---

who is subject to a valid immigration detainer may still be granted compassionate release. . . . Accordingly, the Court addresses Defendant's request for compassionate release without regard to the possibility that he will be detained by U.S. Immigration and Customs Enforcement upon release."); *see also United States v. Monroy*, No. 11-CR-00656-LHK, 2020 WL 7342735, at *3 (N.D. Cal. Dec. 14, 2020) ("Because of Defendant's age of 69 years and Defendant's chronic heart disease, hyperlipidemia, neutropenia, and gastroesophageal reflux disease, the Court finds that Defendant has demonstrated extraordinary and compelling reasons that warrant a sentence reduction."); *United States v. Juarez-Parra*, No. CR 11-0125 RB, 2020 WL 5645703, at *5 (D.N.M. Sept. 22, 2020) (granting defendant's compassionate release, despite a BICE detainer, due to his serious health risks in the wake of the COVID-19 pandemic, including: type 2 diabetes, chronic obstructive pulmonary disease, morbid obesity, hypertension, and asthma).
[36] Dkt. 214 at 3.